IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **DIANNE SOSA, on behalf of herself and those similarly situated Annapolis, MD** | : : : : | **CIVIL ACTION NO.** |
| | : | |
| **Plaintiff,** | : : | **Electronically Filed** |
| | : | |
| **v.** | : : | |
| **LOCKHEED MARTIN CORPORATION 6801 Rockledge Drive Bethesda, MD 20818** | : : : : : | **CLASS ACTION** |
| | : : | **JURY TRIAL DEMANDED** |
| | : : | |
| **Defendant.** | : : | |

## COMPLAINT

### I.   Preliminary Statement

Plaintiff, Dianne Sosa, by and through her undersigned attorneys, brings this

Complaint against her employer Lockheed Martin Corporation (hereinafter referred to as

"Lockheed Martin," "Defendant," or "the company.")  Plaintiff brings this "glass ceiling"

and pay disparity Class Action to redress Defendant's unlawful and continuing

company-wide policies and practices of gender discrimination. Plaintiff charges that

Lockheed Martin discriminates against its salaried female employees by advancing

male employees more quickly than equally or more qualified female employees through

middle management and into upper management level positions, and discriminates in

compensation to these female employees, including with respect to pay grade, annual

and promotional increases, merit pay increases and bonuses.  Director level positions

are the entry level positions within Lockheed Martin for which stock options and other enhanced compensation is available.  Upon information and belief, less than twenty percent of the director level and above positions are held by women, and women at all salaried grades are paid less than men with substantially similar performance and responsibilities. These disparities cannot be explained by any justified business policies. Rather they are the result of policies and practices that discriminate against women. These practices include failure to post open positions at the director level. as well as, at lower levels for positions that are designated stepping stones to the director level positions.

1.      This action seeks to end Lockheed Martin's discriminatory practices, to make Plaintiff and the Class members whole for their losses, and also seeks punitive damages.

2.      On December 23, 2008, Carol Bell filed a putative class action in the District of New Jersey, case number 08-6292, on behalf of certain female employees of Lockheed Martin alleging sex discrimination.  Plaintiff is a class member as defined in the Second Amended Complaint in *Bell, Abt, and Walker on behalf of themselves and those similarly situated v. Lockheed Martin Corporation*, case number 08-6292, currently pending in this District.

3.      Plaintiff Sosa will seek to have this Complaint consolidated into the *Bell* Action and to serve as an additional class representative in the *Bell* action.

II.     **PARTIES**

4.      Plaintiff Dianne Sosa ("Plaintiff") is an individual, who at all relevant times, including the present, has resided in Annapolis, Maryland.  Plaintiff currently is employed by Lockheed Martin at 6411 Ivy Lane, Suite 600 Greenbelt, MD 20770.

5.      Plaintiff is a female.

6.      Defendant Lockheed Martin Corporation is a global security and advanced technology company.  It is a Maryland corporation, headquartered in Bethesda, Maryland.  According to its website, www.lockheedmartin.com, Defendant employs about 136,000 people worldwide and operates in 500 cities and 46 states throughout the United States.  Lockheed Martin is principally engaged in the research, design, development, manufacture and integration of advanced technology systems, products and services.  The majority of its business is with the U.S. Department of Defense and the U.S. federal government agencies.  It is the largest provider of information technology services, systems integration, and training to the U.S. Government.  Lockheed Martin reported 2008 revenues of $42.7 billion.

7.      Defendant is engaged in an industry affecting interstate commerce and regularly conducts business in the States of New Jersey and Maryland.

8.      Class members, including named plaintiff Carol Bell in the *Bell* Action, work in New Jersey facilities of Defendant Lockheed Martin.

9.      At all times material to this action, Defendant was an employer within the meaning of the state and federal laws which form the basis of this action, and employed more than five hundred (500) employees at any one time.

3

10.     At all times material to this action, Defendant acted by and through authorized agents, servants, contractors and/or employees acting within the course and scope of their employment with Defendant or authorized by Defendant and in furtherance of Defendant's business.

III.    **JURISDICTION AND VENUE**

11.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

12.     The causes of action set forth in this Complaint arise under Title VII of the Civil Rights Act of 1964 and 1991, as amended, 42 U.S.C. §2000e *et seq.* ("Title VII").

13.     This Court has federal question jurisdiction over Plaintiff's claims pursuant to 42 U.S.C. §2000e-5 and 28 U.S.C. §1331 and 1343(a).

14.     Venue is proper in this district under 28 U.S.C. §1391(b)(c) and 42 U.S.C. §2000(e)-5(f) because Defendant transacts business and is found in this district.

IV.    **EXHAUSTION OF ADMINISTRATIVE REMEDIES AND TIMELY SUIT**

15.     All conditions precedent to the institution of this suit have been fulfilled with regard to Plaintiff's claims.  On February 22, 2010, Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").  A true and correct copy of the Charge is attached hereto as Exhibit 1.

16.     On December 28, 2010, the EEOC issued a Notice of Right to Sue in connection with Plaintiff's Charge.  A true and correct copy is attached hereto as Exhibit 2.

4

## V.    <u>CLASS ALLEGATIONS</u>

17.    Plaintiff brings Count I (Title VII discrimination) pursuant to Federal Rules of Civil Procedure 23 on behalf of the following Class, defined as:  All persons who are female and who were, are, or will be employed by Lockheed Martin Corporation in "E" or "L" designated positions at levels 3, 4, 5 or 6 in the United States of America from March 21, 2007, through the date of the final disposition of this Action (hereinafter "the Class").

18.    There are questions of law and of fact common to the Class, including, but not limited to:

a) whether Defendant's common operating policies, procedures and practices, including with regard to promotion and pay, have a disparate impact on women in violation of Title VII and whether this disparate impact is justified by any business necessity;

b)  whether Defendant's common operating policies, procedures and practices which result in the disparate treatment of women violate Title VII;

c)  whether Defendant has engaged in a pattern and practice of intentional disparate treatment of its female employees in violation of Title VII,

d)  whether Plaintiff and the Class are entitled to the relief prayed for in this Complaint.

19.    Plaintiff is a member of the Class and the claims of Plaintiff are typical of the claims of the Class.

20.    Plaintiff will fairly and adequately protect the interest of the members of

the Class.  Plaintiff has no interests that are antagonistic to other members of the Class.
Additionally, Plaintiff has retained counsel who are competent and experienced in the
prosecution of employment and complex class action litigation.  Plaintiff will vigorously
prosecute this case on behalf of the Class.

## VI.    FACTUAL ALLEGATIONS

21.    Plaintiff re-alleges and incorporates by reference paragraphs 1 to 20.

22.    Lockheed Martin employs more than 136,000 people. It is the largest
information technology services supplier to the United States government.  Lockheed
Martin is organizationally divided into four "business areas" and a corporate function:
Aeronautics, Electronic Systems, Integrated Systems and Global Solutions ("IS & GS"),
Space Systems and Corporate (also referred to as "Enterprise Operations").  Each
business area includes multiple business units employing thousands of employees in
multiple locations throughout the United States.  Defendant's employees are eligible for
and routinely apply for transfers and promotions across business areas, business units
and geographic locations.  The human resources functions for all of Lockheed Martin
are controlled by the Corporate Human Resources department.  The policies, practices
and procedures referenced herein are common to all business areas, units and
locations of Lockheed Martin.

23.    Two of Lockheed Martin's salaried position job code designations are "L"
and "E."  The   "L" level designates a leadership position.  L3 is the entry level
leadership position.  The "E" level designates an exempt position.  E3 is the entry level
exempt position. The Class consists of women designated E 3, 4, 5 or 6 and L 3, 4, 5 or
6.  These are all salaried positions.

6

24.     Any position specified as L7 and above or E7 and above (i.e., L7, L8, L9, E7, E8 or E9) is considered a Director-level position or above.  Compensation for Director-level positions and above includes higher base salary, bonuses, stock options and/or significantly enhanced employee benefits that are not available in lower level designated 3 through 6 positions.

25.     As of August 1, 2010, there are well in excess of several thousand female employees of Lockheed Martin in L or E level positions, L3 through L6 and E3 through E6.

26.     Lockheed Martin employs uniform employment and personnel policies throughout the United States.  Lockheed Martin's Corporate (Enterprise Operations) business area includes the human resource functions common to the entire corporation. That corporate function maintains the company-wide personnel policies and procedures, including the corporate-wide salary grade ranges by job code, various electronic databases and the Human Resources intranet content. Regardless of business area, the policies relating to pay, assignment and promotion are uniform. Lockheed Martin regularly audits for compliance with their uniform company policies and procedures.

27.     Defendant maintains a corporate intranet which makes available to all Human Resources employees of Defendant (as well as certain other employees), a uniform set of Human Resources procedures.  In addition since September 24, 2007, Defendant has had an on-line tool called HR Metrics (visible in the HR Professionals section of the LM People intranet) which enables Human Resources employees throughout the company to produce a variety of reports "either business specific or

7

enterprise wide to analyze attrition statistics, female and minority representation, compensation data and more."

28. The personnel patterns and practices of Defendant that result in the gender-based discrimination alleged herein including pay discrimination and discrimination in promotions are systemic and reflected in and caused by Corporate policies and practices which are uniform throughout the various business areas and units of Defendant's United States operations.

29. FOCUS is the Lockheed Martin People Compensation Planning System maintained by Defendant's Corporate ("Enterprise Operations") business area. Defendant maintains uniform Human Resources procedures relating to compensation as evidenced by the FOCUS program which charges the Corporate compensation group with maintaining uniform salary grade ranges for each job code.

30. All information concerning compensation is stored in Defendant's "Lockheed Martin People," designated "LMP," database which includes electronically loaded and maintained records for all employees. The FOCUS system is used to generate reports and analysis by salary grade level and to monitor conformity with Lockheed Martin policies. Salary planning data by salary grade level is generated for the entire Lockheed Martin population. Salary grade ranges by job code are decided at the Corporate level; their use is mandatory throughout Defendant; however, there is substantial discretion in setting salary within the salary ranges. The Corporate compensation function monitors compliance.

31. There are more than 4,000 leaders and functional representatives with employee relations and compensation responsibilities. The rules and procedures for

internal recruiting and selection are uniform throughout Defendant and are enforced throughout the Corporate human resources and audit functions.  As described below, these policies permit, indeed, require excessive subjectivity in their implementation.

32.     Lockheed Martin imposes company-wide subjective criteria for determining education and experience requirements for promotion.  Published Lockheed Martin Corporation criteria called "Exempt Bench Mark Level Criteria" describe minimum education and experience requirements for positions at all levels. Typically, the descriptions of minimum education and experience required for levels 4 through 7 are identical, effectively eliminating all but subjective criteria with regard to education and experience.  Thus, Lockheed Martin provides no meaningful distinctions among the levels 4 through 7, rather it maintains a company-wide policy of excessive subjectivity in determining minimum requirements for selection for levels 4 through 7. This excessive subjectivity results in discrimination based on gender in advancement, pay grade and compensation.

VII.   **PROMOTION DISPARATIES BASED ON GENDER**

33.     It is the expressed, company-wide policy of Lockheed Martin that open positions at the L7 and E7 level and above are not posted.  This policy of not posting open positions that are above level 6 is documented in Defendant's corporate-wide policy, CPS-521 §§ 5.15 through 6.2.

34.     Most open positions at the lower levels,  L3, L4, L5, L6, E3, E4, E5 and E6, are posted for open application on Defendant's internal intranet, "Career Network, LM Careers,"  a company-wide online system used, *inter alia*,  for posting and processing job applications.  There is an icon "Apply for a Job" for positions below level

9

7.  With respect to these L6 and below positions (in contrast to its policy for L7 positions and above), Lockheed Corporate recognizes the extent to which posting open positions provides employees with a measure of uniform and transparent treatment: "The minimum posting period for any job is seven calendar days.  During this time, any employee who bids for the position must be considered for it. The hiring element must either interview the employee for the position, or provide the employee with the basis for the decision not to interview." (CPS-521 § 6.3, "Recruitment and Hiring Practices- corporate headquarters/corporate policy statement CPS-521/revision No. 7/effective December 18, 2006/copyright 2006 Lockheed Martin Corporation/current policies and procedures" as posted on Defendant's Intranet).

35.    Throughout Defendant, the classification "Executive Position" is uniformly set at level 7 or above with a base salary of $100,000 or more.  Recruitment is controlled through the Corporate-wide "Executive Recruiting" office in the Staffing Services department in Corporate Human Resources, which assigns one of its staff members to perform the search (CPS-521 § 5.15).  As described hereinafter, even below the level 7 designation, there is selectivity in posting positions which is sanctioned by the Corporate company-wide policy that excludes "growth promotions" from the requirement to post (CPS-521 § 5.15- 6.2).  Defendant's policy CPS-521 excludes from posting requirements, *inter alia*, Executive Positions (level 7 or above and base salary of $100,000) and "growth promotion" positions as well as Leadership Development Program position rotations and other corporate sponsored rotational programs or initial placements following Leadership Development Programs ("LDPs"). These policies are enforced by the Corporate business area on a company-wide basis

throughout the US.  "Any deviation from this [the foregoing] policy requires the prior approval of the corporate Senior Vice President Human Resources or designee."(CPS-521 § 8.5).

36.    As a result of Lockheed Martin's uniform policies limiting posting, and in contrast to level 3-6 positions, there is no way for an employee to learn of a level 7 opening or a level 6 growth and advancement track position, other than through word of mouth.  Further, there is no process by which employees can assert their interest in applying for vacancies at the L7 level and above or promotion track level 6 positions exempted from the posting requirements.   Historically and continuing through the present, selection for these positions is made overwhelmingly by male directors and officers of Defendant and the successful candidates have been disproportionately male. There is no business justification for failure to use the established Lockheed Martin recruitment and hiring procedures (CPS-521 § 6.3) for filling promotion track level 6 positions and level 7 positions.

37.    Throughout Defendant, the four business areas each conduct Talent Management Reviews.  The applicable managers have sessions where they put the names of level 5 and above employees on a grid with sections based on the Performance Assessments Ratings from the annual performance reviews as well as a subjective assessment of "potential."   Throughout Lockheed Martin, these sessions are overwhelmingly conducted by men.  Open positions designated as "Leadership Positions," for which posting is also not required, even at the level 6, are filled through this process.  There is no business justification for failing to use established Lockheed Martin recruitment and promotion procedures (CPS-521 § 6.3) for Leadership Positions

11

at level 6 and above.

38.     There is also a company-wide policy that prior to promotion to a level 7 position or above, an employee must have been identified as a "high potential" on a Performance by Potential Chart (called the "9-Blocker" or "9-Box" Chart) or be directly recommended by their supervisor.  There is a process for determining "high potential" employees at meetings, the details of which are not shared with employees. Employees are not made aware who the selectors are or what criteria they use when evaluating candidates. Upon information and belief, the applicant must have a current annual performance appraisal rating of 1 or 2 (out of a possible 1 through 5).  Subjective and intentionally discriminatory performance appraisals (overwhelmingly performed by men) for 5 and 6 level positions combined with a "bell curve" rating system (which requires a designated distribution of performance ratings among a small group of employees rated by a common manager) result in women being disproportionately rated 3 (average) or below, effectively eliminating the possibility of being designated as a "Hi-Pot."  These performance ratings also directly impact the annual percentage pay increase that a Lockheed Martin employee receives.

39.     There is also a company-wide system of creating "stretch assignments" (also called growth positions) and designating them as a pre-requisite to promotion eligibility, even at the 4-6 level.  A "stretch assignment" is an opportunity to learn about another job in the company and it is usually a high visibility assignment.  "Stretch assignments" are generally considered necessary for advancement and are another exception to the posting requirement of CPS-521 § 6.3. There are no objective criteria or process for creation or selection of "stretch assignments."  Further, a "sponsor" (the

vast majority of whom are men) is very important to ultimately receiving a "stretch assignment." "Stretch assignments" are created for and filled by men, rather than women, in disproportionate numbers. There is no business justification for the disproportionate selection of men for "stretch assignments."

40.   Lockheed Martin's aforesaid policies restricting posting of open positions as well as its policies and practices for selecting employees for Leadership Positions, stretch positions, growth positions, Leadership Development Programs, rotational programs and "Hi-Pot," each have a disparate impact on its female employees. These policies result in women advancing more slowly than men and have no business justification.

41.   Lockheed Martin's aforesaid policies restricting posting of open positions as well as its policies and practices for selecting employees for Leadership Positions, stretch positions, growth positions, Leadership Development Programs, rotational programs, and "Hi-Pot," each constitute disparate treatment of its female employees.

42.   Plaintiff and the Class are or were female employees of Lockheed Martin who were denied promotional opportunities or have slower career advancement than men as a result of their gender.

## VIII.   PAY DISPARATIES

43.   The aforesaid policies also have resulted and continue to result in women being paid less than similarly situated men.

44.   Upon information and belief based on available information, at the 3, 4, 5 and 6 levels females are (a) disproportionately paid less than men who perform substantially similar work, with similar or lesser skills and experience, and (b)

disproportionately rated lower than men as a result of the "bell curve" forced rating systems of Defendant and their lower selection rates for stretch positions, leadership training and other advancement track opportunities, resulting in lower compensation.

45.     Upon information and belief, in the limited instances where women are awarded entry level senior management positions, they are often graded lower and/or paid less than customary for the positions and responsibilities.  The allegations concerning Plaintiff Bell and other class member as set forth in the Second Amended Complaint in *Bell, Abt, and Walker v. Lockheed Martin Corporation,* case number 08-6292, illustrate this.

46.     This pattern and practice of unequal pay, promotion, training and opportunity is not the result of random, non-discriminatory factors.  Rather, Lockheed Martin has acted and continues to act in a pattern and practice of intentional sex discrimination in pay, training, advancement and promotion by utilizing policies and practices that have an adverse impact on female employees that is without business necessity.

47.     As set forth above, these practices include:

- Paying female employees less  than similarly situated men;
- Assigning female employees lower job classification and/or salaries within the same job classification than similarly situated men;
- Failing to post promotional opportunities and L7 positions;
- Relying on subjective, inconsistently applied criteria in performance reviews, assignments, training, pay and promotional decisions;

14

- Reviewing and rating female employees less favorably than men;

- Providing less training and support for female employees, including fewer "stretch assignments" and other training and advancement opportunities; and,

- Failing to promote women through middle management and into upper level positions.

IX.   **ALLEGATIONS OF PLAINTIFF SOSA**

48.    Plaintiff Sosa was hired by Defendant in or about December 3, 2001 as a Program Senior Manager (grade L6) of the Information Technology Business Unit.  On or about December 4, 2004, reclassified to Business Development Analysis Senior Manager in a lateral position.  Plaintiff's current position is Capture Management, Principal (E6).

49.    On or about September 5, 2005, Plaintiff Sosa was transferred to Defendant's Integrated Systems & Solutions business unit and moved to Santa Maria, California.  Plaintiff Sosa was given a lateral position, grade L6, even though her predecessor in the position, Dave Myers (male), was a Vice President, grade L8.  Ms. Sosa retained her title of Business Development Analysis Senior Manager, grade L6. In this new position she reported to John James (male) Vice President of Business Development and also supported Ralph Torino (male) Vice President of Space Support and Global Strike.  She received no transition of responsibilities from her predecessor prior to his retirement or guidance from either Mr. James or Mr. Torino.

50.     In or about December 2005, Plaintiff Sosa received a "successful contributor" ranking in her performance review by Mr. James.  He told her that he did not give her a higher rating because he believed that starting in a new position did not merit a higher rating and that in so deciding he did not consider her actual accomplishments and performance.

51.     In or about 2006, Mr. James named Bill Kincaid (male) as a Director (L7) and Mr. Kincaid became Plaintiff Sosa's direct supervisor.  Prior to his new assignment, Bill Kincaid was lateral to her on the organizational chart with both of them reporting to Mr. James. The position was not posted or "competed."  Plaintiff Sosa was qualified for the position.

52.     In or about July 2007, Plaintiff Sosa was transferred to Defendant's IS&S Business unit and moved to Maryland.  She applied for the position as a Business Development Analyst, Senior Manager, but was told by Don Fulop (male), her supervisor, that her business title was "Director" even though she remained a grade L6. Her predecessor in the position, Barbara Slayton (female) held the title of Vice President and was a grade L8.  She was told that the reason for the downgrade of the position was because the business had decreased in size and no longer "supported" a position above L6.  The responsibilities for the position remained the same and the amount of direct reports remained approximately the same.  She believed that the stated reason was a pretext for sex discrimination because Defendant has similar positions in lines of business similar in size to mine that were grade L-7 or L-8.  In this position, Plaintiff supported Rick Hieb (male), Vice President of Civil Programs.

53.     Since 2007, Plaintiff Sosa has been paid less than John Piwonka (male) L6 Business Development Analyst, Senior Manager who reported to Plaintiff Sosa.  Mr. Piwonka resides in Houston, Texas.  When Plaintiff Sosa addressed this pay disparity with Human Resources she was told it was because Mr. Piwonka was older and had nothing to do with position responsibility.  Plaintiff Sosa resides in Maryland which has higher cost of living pay scale than Houston, Texas.

54.     In or about December 2007, Plaintiff Sosa received a "high contributor" ranking in her performance review.   Although she had only been in this position since June 2007, Mr. Fulop stated that she had performed very well during this short amount of time.  This confirmed that the reason given by Mr. James for her performance rating in 2005 was a pretext for sex discrimination.

55.     In or about December 2008, Plaintiff Sosa received a "successful contributor" ranking in her performance review.  During 2008, she provided business development support to a very large project aimed at winning a bid run out of Defendant's Houston office.  The capture manager (lead on the project), Don Travis (male), assumed full control of the business development budget and spent as he saw necessary to win the bid.  Mr. Travis had the backing of Ken Asbury (male), President of Civil Programs on spending what he felt necessary.  This spending went against Mr. Fulop's goal of reducing expenditures.  Mr. Fulop held Plaintiff Sosa accountable for the cost overruns even though she was not in control of this spending.  Mr. Fulop knew that Mr. Travis was running this bid and Plaintiff Sosa did not have control over the expenses.  Mr. Fulop stated that the cost overrun was the driving reason for not giving her a higher rating on her performance evaluation.

17

56.     In or about January 2009, Defendant's IS&GS business unit underwent a reorganization and Mike Grasso (male) replaced Don Fulop as Vice President Business Development.  Within three (3) months Mr. Grasso removed Plaintiff Sosa from her L6 position, with no explanation provided to Plaintiff Sosa, and appointed Dan Norton (male) L8, while Mr. Grasso decided to "re-compete" her position because Defendant was upgrading it from a L6 position which Plaintiff Sosa held to an L7 position.  There was not a change to the size of the business in sales or number of employees that lead to Defendant upgrading the position.  The position was not posted.

57.     Plaintiff Sosa was the only female selected to interview for the Director position.  The other candidates were Jason Nichols (male) (L6), Dave Brannon (male) (L7), and Mike Diggins (male) (L6).  Mr. Grasso, Mr. Norton, Rick Hieb (male), and Mary Ann Michenko (female) were the interviewers for the position.  Jason Nichols (male) was selected as the new Director L-7.

58.     On or about November 18, 2009, Defendant formally announced the selection of Mr. Nichols as Director (L7).  The announcement also stated that Mr. Brannon's appointment as capture manager.  The announcement did not mention where Plaintiff Sosa was assigned.  She emailed Mr. Grasso and Mr. Norton asking them what her new role would be.  Mr. Grasso responded that she would be in the same group, in the same position, supporting Mr. Nichols the new Director.  Mr. Brannon and Mr. Diggins remained reporting directly to Mr. Norton.

59.     Mr. Norton told Plaintiff Sosa that Mr. Nichols was selected because he had capture management experience.  She had capture management experience from previous positions with Defendant.  After the announcement was made, Defendant

assigned another of the applicants, Mr. Brannon, as a "capture manager" to a large opportunity bid.  Mr. Brannon was already an L7, but did not have previous "capture management" experience.  Plaintiff Sosa was more qualified for the opportunity than Mr. Brannon.  At the time of the interview, at least Mr. Grasso, Mr. Norton, and Mr. Hieb knew about her previous "capture management" experience.  Mr. Grasso and Mr. Norton both told her that her previous "capture management" experience was not sufficient, yet she was not selected for a "capture management" opportunity like Mr. Brannon.

60.     In or about April 2010, Plaintiff Sosa was assigned as Capture Manager for two parallel opportunities still under the leadership of Mr. Nichols.  One opportunity was a larger primary role; the other was a smaller subcontractor role.  On or about October 28, 2010, Plaintiff Sosa met with Mr. Nichols to discuss career path goals.  During the conversation, Plaintiff Sosa reiterated that upon completion of running capture on both opportunities she wanted to continue her career path in business development strategy.  Plaintiff Sosa ran capture for both of these opportunities until on or about December 7, 2010, when Mr. Nichols announced that Plaintiff Sosa would no longer be running capture on the large primary role.  Plaintiff Sosa expressed her concern that the smaller subcontract opportunity would not meet Defendant's criteria for capture management experience expressed to her when she was not promoted in November 2009.  Mr. Nichols responded that the smaller subcontract opportunity would provide sufficient experience.  Plaintiff Sosa was reassigned to do business strategy work for Mr. Nichols.

61.     On or about December 14, 2010 an organization announcement was made naming Mr. Diggins as Director of Business Development for Citizen Protection Solutions reporting to Mr. Norton.  Plaintiff was not interviewed for this position.

62.     Despite 10 years of successful performance in L6 positions, Plaintiff Sosa was never promoted to an L7 position and was recently downgraded to a less responsible position while less well qualified males were promoted and given stretch assignments.

## Count I
## Sex Discrimination Under Title VII

63.     Plaintiff incorporates by reference as if fully set forth herein, the allegations of paragraphs 1 through 62 above.

64.     This claim is brought on behalf of Plaintiff and the Class she represents.

65.     The foregoing conduct violates Title VII.

66.     Lockheed Martin has and continues to maintain procedures and practices for making decisions about evaluations, promotions, assignments and compensation that have a disparate impact on its female employees, including Plaintiff and the Class. These procedures and practices have no business justification.

67.     Lockheed Martin has intentionally discriminated against Plaintiff and the Class and has maintained procedures and practices for making decisions about evaluations, promotions, assignments and compensation which discriminate against Plaintiff and the Class.   By committing the foregoing acts of discrimination against Plaintiff and the Class, Defendant has willfully and intentionally engaged in unlawful sexual discrimination in violation of Title VII.

20

68.     The sex of Plaintiff and the Class was a motivating and/or determination factor in Defendant's treatment of Plaintiff and the Class.

69.     The foregoing conduct of Defendant  was intentional, malicious, wanton, outrageous under the circumstances and performed either recklessly or with callous indifference to Plaintiff's and the Class' federally protected rights.  This was done by and with the knowledge of Defendant's upper management and warrants the imposition of punitive damages.

70.     Defendant has caused and continues to cause Plaintiff and all Class members substantial losses in earnings, promotional opportunities, training, mentoring and other employment benefits.

71.     As a direct and proximate result of Defendant's violation of Title VII, Plaintiff and the Class will continue to suffer irreparable injury and monetary damages unless and until this Court grants the relief requested herein.

72.     Plaintiff and the Class represent that they have no plain, adequate or complete remedy in law to redress the wrongs alleged herein, and the injunctive relief sought in this action is the only means of securing complete and adequate relief. Plaintiff and the Class are now suffering and will continue to suffer irreparable injury from Defendant's discriminatory acts and omissions.

73.     Plaintiff and the Class are entitled to the relief requested in the Prayer for Relief below, including declaratory and injunctive relief.

74.     Plaintiff and the Class are entitled to recover punitive damages as a result of Defendant's malice and/or reckless indifference to their protected rights.

75.     No previous application has been made for the relief requested herein.

21

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Sosa on behalf of herself and the members of the Class prays that the Court grant relief as follows:

a)      Certification of Count I as a Class Action on behalf of the proposed Class;

b)      Designation of Plaintiff Sosa as a representative of the Class;

c)      Appointment of Console Law Offices, LLC; Doffermyre Shields Canfield & Knowles, LLC; and Giskan Solotaroff Anderson & Stewart, LLP as Class Counsel of record for the Class pursuant to Federal Rule of Civil Procedure 23(g);

d)      A declaratory judgment that the practices complained of herein are unlawful and violate Title VII;

e)      An adjudication that Defendant's violations of Title VII were willful;

f)      A  permanent injunction against Defendant and its officers, agents, successors, employees, representatives, and all persons acting in concert with them, as provided by law, to prohibit each of the unlawful practices, policies, and patterns of sex discrimination set forth herein;

g)      An Order that Defendant  employ some method to confirm that future decisions affecting employee pay, assignments to promotion track positions, and promotions are made without regard to sex, including, but not limited to, hiring an expert Industrial Psychologist to review Defendant's employment practices and develop new practices, a Labor Economist/Statistician to conduct a pay equity analysis, and an external advisor concerning equal employment opportunity and diversity initiatives to monitor the promotion and retention of female employees; adjusting pay discrepancies that have been based on gender so that female

employees are paid the same as their male colleagues for doing the same or similar work; posting all job positions and promotional opportunities; eliminating sex based disparities from the evaluation system; and providing equal training opportunities to all qualified employees;

h)     An Order that Defendant institute sufficient policies to deter and prevent discrimination based on sex in pay, evaluations, assignments to promotion track positions and promotion and to remedy the effects of past and present unlawful employment policies, practices, and procedures;

i)     An Order that Defendant institute a policy which provides for appropriate remedial and corrective action for violators of said policies;

j)     An Order instating Plaintiff and the Class to their rightful positions and adjusting their compensation, including wages and benefits to those which would have been attained but for Defendant's discriminatory practices;

k)     An award of damages suffered as a result of Defendant's unlawful conduct including back pay, front pay, instatement, promotion, payment of lost compensation and benefits, compensatory damages, and such other legal or equitable relief as to the Court deems appropriate to effectuate the purposes of all statutes pled;

l)     An award of exemplary and punitive damages in an amount commensurate with Defendant's ability to pay and to deter future conduct;

m)     An award of reasonable attorney's fees and costs incurred by and on behalf of Plaintiff and the respective Class to be paid by Defendant;

n)     Pre-judgment and post-judgment interest, as provided by law; and,

o)      Such other further legal or equitable relief as this Court deems necessary, just and proper.

Dated:  March 24, 2011                    Respectfully submitted,

                                          CONSOLE LAW OFFICES LLC

                               By:        s/ Andrew L. Mackerer
                                          Andrew L. Mackerer
                                          Carol A. Mager*
                                          Stephen G. Console
                                          Laura C. Mattiacci
                                          1525 Locust Street, 9th Floor
                                          Philadelphia, PA 19102
                                          215-545-7676
                                          215-545-8211 (fax)
                                          mager@consolelaw.com
                                          console@consolelaw.com
                                          mattiacci@consolelaw.com
                                          mackerer@consolelaw.com

                                          DOFFERMYRE SHIELDS
                                          CANFIELD & KNOWLES, LLC

                                          Martha J. Fessenden
                                          1355 Peachtree Street
                                          Suite 1600
                                          Atlanta, GA 30309
                                          404-881-3008
                                          404-881-3007 (fax)
                                          mfessenden@dsckd.com

                                          GISKAN SOLOTAROFF
                                          ANDERSON & STEWART LLP

                                          Darnley D. Stewart*
                                          11 Broadway, Suite 2150
                                          New York, NY 1004
                                          212-500-5106
                                          212-414-0347 (fax)
                                          dstewart@gslawny.com

                                          Attorneys for Plaintiff,

24

Dianne Sosa and those similarly
situated

* Pro Hoc vice application pending